USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: _09/17/2012_ ⓐ

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— :

RAPHAEL ALVAREZ,                    :

                                    :

            Plaintiff,              :

                                    :        Before: Richard K. Eaton, Judge[*]

      v.                            :

                                    :        Court No. 10 Civ. 09541 (RKE)

EAST PENN MANUFACTURING CO.,        :
and TROY ALAN ADAM,                 :

                                    :

            Defendants.             :

———————————————————— :

## OPINION AND ORDER

Eaton, Judge: Defendants East Penn Manufacturing Co. ("East Penn") and Troy Alan

Adam move for summary judgment on plaintiff Raphael Alvarez's claim for damages resulting

from injuries sustained in a motor vehicle accident.   The court exercises diversity jurisdiction

pursuant to 28 U.S.C. § 1332(a) (2006).

For the reasons set forth below, defendants' motion is GRANTED, in part, and DENIED,

in part.

## BACKGROUND

On the afternoon of July 16, 2010, a two-vehicle accident occurred at the intersection of

Astoria Boulevard South and 49th Street in Queens County, New York.   Pl.'s Rule 56.1

Statement of Undisputed Material Facts ¶¶ 1, 2 ("Pl.'s 56.1 Stmnt.").   Just prior to the accident,

plaintiff was travelling southbound in the far left lane of Astoria Boulevard South.   Proposed

———————————————

[*]        Judge Richard K. Eaton, of the United States Court of International Trade, sitting
by designation.

Pre-Trial Order 2 ("Pre-Trial Order").   As plaintiff approached the intersection of Astoria

Boulevard South and 49th Street, Mr. Adam, who was driving a tractor trailer in the lane to the

right of plaintiff, attempted to make a wide left turn onto 49th Street.[1]   Pl.'s 56.1 Stmnt. ¶ 3;

Pre-Trial Order 2–3.   As Adam executed the turn, the front of his tractor trailer moved into

plaintiff's lane, where their vehicles collided, causing plaintiff's car to travel across the

intersection and strike a corner guardrail head-on.   Pre-Trial Order 3.   As a result of the accident,

plaintiff sustained injuries to his face, cervical spine, right knee, and right shoulder.   Defs.' Mem.

in Supp. of Mot. for Summ. J. ("Defs.' Mem.") Ex. E, ¶ 19.

    Plaintiff filed this action in the Supreme Court for New York County on November 24,

2010, and it was removed to this Court on December 22, 2010.   Defs.' Mem. Ex. A; Defs.' Mem.

Ex. B, at 1.   In his Complaint, plaintiff alleges that, as a result of the accident, he sustained a

"serious injury" as defined by N.Y. Ins. Law § 5102(d) (McKinney 2009), New York's "no-fault"

statute.[2]

    Defendants moved for summary judgment on October 11, 2011, Defs.' Notice of Mot. 1,

---

[1]     Defendants concede that Adam was acting within the scope of his employment with East Penn at the time that the accident occurred.   Pre-Trial Order 2–3.

[2]     In his Complaint, plaintiff also claims that he incurred economic loss greater than "basic economic loss" as defined by § 5102(a).   Compl. ¶ 17.   The parties, however, have stipulated that the "viability of the plaintiff's claim is subject to [the definition of a "serious injury" within] New York Insurance Law § 5102(d)," Pre-Trial Order 9, and, thus, plaintiff has abandoned his "basic economic loss" argument.   It is clear why plaintiff has done so.   "Basic economic loss" means damages of up to fifty thousand dollars ($50,000) in medical expenses, lost earnings, as well as other reasonable monetary losses.   N.Y. Ins. Law § 5102(a); id. at § 5104.   To date, it appears that plaintiff has incurred ten thousand dollars ($10,000) in physician's expenses and five thousand dollars ($5000) in hospital expenses.   Defs.' Mem. Ex. E, ¶ 23.   Plaintiff contends that he requires future surgery costing approximately thirty thousand dollars ($30,000).   Pre-Trial Order 8.   Therefore, plaintiff's combined expenses of forty-five thousand dollars ($45,000) will not exceed the amount found in the definition of "basic economic loss."   Thus, his suit may only proceed under a claim of a "serious injury."

2

arguing that plaintiff has not sustained a "serious injury" within the meaning of the statute.   Defs.' Mem. 5; *see* N.Y. Ins. Law §§ 5102(d), 5104(a).

## STANDARD OF REVIEW

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   A genuine issue of material fact exists if admissible evidence has been submitted that could enable a reasonable jury to decide in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   In considering a motion for summary judgment, the court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Am. Cas. Co. of Reading, Pa. v. Nordic Leasing, Inc.*, 42 F.3d 725, 728 (2d Cir. 1994) (quoting *Consarc Corp. v. Maine Midland Bank, N.A.*, 996 F.2d 568, 572 (2d Cir. 1993)).

## STATUTORY FRAMEWORK

New York has enacted a no-fault motor vehicle insurance statute, which seeks to guarantee prompt and full compensation for "basic economic loss," incurred as a result of a motor vehicle accident. *See* N.Y. Ins. Law §§ 5101–5109 (McKinney 2009).   Payments under the no-fault statute are funded by the insurance policies of the parties involved in the accident. *See* N.Y. Ins. Law § 5103(a).

Under the no-fault statute, recovery of damages is barred for "non-economic loss, except in the case of a serious injury." *Id.* § 5104(a).   "Non-economic loss" may include pain and suffering damages, as well as other non-monetary detriments. *Id.* § 5102(c).   A "serious injury"

3

is

> a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

*Id.* § 5102(d).   Thus, the plaintiff's claim to recover non-economic damages arising from this automobile accident is barred, unless he suffered a "serious injury."   *Id.* § 5104(a).

Defendants move for summary judgment on the ground that plaintiff's alleged injuries fail to meet the statutory definition of "serious injury" as a matter of law.   When moving for summary judgment pursuant to the "serious injury" provision of New York's no-fault statute, a defendant has the initial burden of establishing a prima facie case that plaintiff's injuries do not meet the threshold of a "serious injury."   *Charley v. Goss*, 863 N.Y.S.2d 205, 206 (N.Y. App. Div. 1st Dep't 2008), *aff'd*, 904 N.E.2d 837 (N.Y. 2009) (citing *Toure v. Avis Rent a Car Sys., Inc.*, 774 N.E.2d 1197, 1199 (N.Y. 2002); *Cortez v. Manhattan Bible Church*, 789 N.Y.S.2d 117 (N.Y. App. Div. 1st Dep't 2005)); *see also Offman v. Singh*, 813 N.Y.S.2d 56, 58 (N.Y. App. Div. 1st Dep't 2006) ("Because defendants failed to make a prima facie showing their motion must be denied, regardless of the claimed insufficiency of the opposing papers.") (citing *Winegrad v New York Univ. Med. Ctr.*, 476 N.E.2d 642 (N.Y. 1985); *Diaz v. Nunez*, 774 N.Y.S.2d 500 (N.Y. App. Div. 1st Dep't 2004)).   If a defendant makes out a prima facie case that a plaintiff's injuries do not satisfy the definition of "serious injury," the burden shifts to plaintiff to come forward with objective evidence that overcomes defendant's motion by demonstrating that there is a genuine dispute regarding whether the injury has met the "serious injury" threshold.   *Charley*, 863

4

N.Y.S.2d at 206–07.

## DISCUSSION

I.  Establishing a "Serious Injury" Under the Statute

In their motion, defendants argue that plaintiff has failed to demonstrate that he sustained a "serious injury" under the statutory definitions found in § 5102(d).[3]  Defs.' Mem. 19–25. Plaintiff, however, argues that his medical affidavits create a genuine question of material fact as to whether his injuries meet the threshold for a "permanent consequential limitation of use" or a "significant limitation of use."  Pl.'s Mem. of Law in Opp. To Defs.' Mot. for Summ. J ("Pl.'s Mem.") 9–15.  At oral argument, plaintiff also asserted that defendants had failed to make a prima facie showing that he had *not* suffered a "significant disfigurement."  Accordingly, the only

---

[3]      Four of the nine definitions, i.e., "death," "dismemberment," "a fracture," and "loss of a fetus," are inapplicable to the facts of the case.  Further, plaintiff conceded at oral argument that he has not sustained a "permanent loss of use" or "a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment" ("90/180 injury"), and therefore he has now abandoned these claims.   The record reveals why plaintiff has not chosen to pursue the 90/180 injury claim.  Previously, plaintiff had asserted a "permanent loss of use" and a 90/180 injury. Pre-Trial Order 5.  In support of the 90/180 injury claim, plaintiff asserted that due to the accident, he has difficulty participating in some of his recreational activities including jujitsu, baseball, and running.  Defs.' Mem. Ex. F, at 92:5–15.  Plaintiff, however, returned to work four days following the accident.  "Substantially all" has been strictly construed by the New York Court of Appeals to mean that the injury prevents the plaintiff's usual activities "to a great extent," rather than a "slight curtailment."  *Licari v. Elliott*, 441 N.E.2d 1088, 1091 (N.Y. 1982) (granting summary judgment against a plaintiff who sustained temporary injuries and returned to work within twenty-four days of a motor vehicle accident).  It is apparent that plaintiff's injuries have caused a slight curtailment of his usual activities, but not a substantial interference.  Finally, it does not appear that plaintiff ever specified how he sustained a "permanent loss of use." Defendants argued in their brief, and are correct that, "only a total loss of use is compensable under the 'permanent loss of use' exception to the no-fault remedy."  *Oberly v. Bangs Ambulance*, 751 N.E.2d 457, 458 (N.Y. 2001).  Even exceptionally painful injuries must totally and permanently prevent the use of a portion of the body to qualify under this provision.  *See id.* at 4459–60.  None of the medical affidavits report that plaintiff has lost total functionality of any bodily system.

questions before the court are whether there are triable issues of fact concerning plaintiff's claim that he sustained a "serious injury" by reason of (a) a "significant disfigurement," or (b) a "permanent consequential limitation of use" or a "significant limitation of use."

A. "Significant Disfigurement"

Plaintiff sustained a facial scar as a result of a plastic surgery procedure performed to remove scar tissue from the interior of his gum resulting from the accident.    Defendants have argued that because plaintiff, in deposition testimony, described the scar as "very little," it is not consequential enough to meet the threshold of a "significant disfigurement."    Defs.' Mem. 20 (citing Defs.' Mem. Ex. F, at 88:15–21).    Plaintiff did not brief this issue, but nevertheless asserted at oral argument that, because defendants have failed to meet their initial burden with respect to this element of the claim, they are not entitled to summary judgment on the issue of "significant disfigurement."

Under New York law, to be considered a "significant disfigurement," a scar must be "one that 'a reasonable person would view . . . as unattractive, objectionable, or as the subject of pity or scorn.'"   *Hutchinson v. Beth Cab Corp.*, 612 N.Y.S.2d 10, 11 (N.Y. App. Div. 1st Dep't 1994) (quoting *Landsman v. Bunker*, 530 N.Y.S.2d 407, 408 (N.Y. App. Div. 4th Dep't 1988)). "[s]mall, well-healed scars [cannot] constitute a 'significant disfigurement,'" *Santos v. Taveras*, 866 N.Y.S.2d 43, 44 (N.Y. App. Div. 1st Dep't 2008) (citing *Hutchinson*, 612 N.Y.S.2d at 10), and scars less than two inches in length have consistently been held to not constitute a "significant disfigurement." *Compare Sirmans v. Mannah*, 752 N.Y.S.2d 359, 360 (N.Y. App. Div. 2d Dep't 2002) (holding that a scar measuring seven-eighths of an inch on plaintiff's lip was not a "serious injury"), *with Cushing v. Seemann*, 668 N.Y.S.2d 791, 792 (N.Y. App. Div. 4th Dep't 1998)

(holding that a seven-inch scar established a genuine issue of material fact regarding "significant disfigurement").

As noted, defendants bear the initial burden of proof to show that plaintiff has not sustained a "significant disfigurement."   In order to meet this burden, a defendant normally must produce "photographic or medical evidence" of the scar purported to be a "significant disfigurement" in order to demonstrate that the scar does not meet the minimum threshold.   *Spoth v. Clark*, 539 N.Y.S.2d 192, 192 (N.Y. App. Div. 4th Dep't 1989).   Deposition testimony alone, however, may be used by a defendant to establish prima facie that plaintiff did not meet the "significant disfigurement" threshold.   *McCabe v. Boyce*, 770 N.Y.S.2d 495, 497 (N.Y. App. Div. 4th Dep't 2003) ("The evidence submitted by [plaintiff] herself establishes that she did not sustain a significant disfigurement, inasmuch as she testified at her deposition that the scar on her forehead was 'very, very slight.'").

Here, defendants have met their prima facie burden because they have shown through plaintiff's deposition testimony that his scar is "very little."   When asked if he sustained a scar from the plastic surgery procedure, plaintiff answered, "[a] [v]ery little one," indicating with his hand a scar on the left side of his chin.   Defs.' Mem. Ex. F, at 88:17–23.   In addition, plaintiff's medical records show that the scar is one centimeter (two-fifths of an inch) long.   Pl.'s Mem. Ex. B, at 6.   In combination, plaintiff's testimony, together with the medical records, tend to show that the scar is not "unattractive, objectionable, or [] the object of pity and scorn," and is less than two inches in length.   *Sirmans*, 752 N.Y.S.2d at 360; Defs.' Mem. Ex. F, at P.88, 11, 15–21.

Thus, the burden has shifted to plaintiff to demonstrate a genuine dispute of fact as to whether his scar constitutes a "significant disfigurement" by submitting evidence from which a

reasonable jury could conclude that the scar was "unattractive, objectionable, or [] the object of pity and scorn."   Plaintiff did not brief this issue, nor offer any argument that the scar constituted a "significant disfigurement."   Because defendants have met their burden of proof on the issue of "significant disfigurement," and plaintiff has failed to meet his burden of showing that a reasonable jury could find that his scar meets the "significant disfigurement" threshold, there is no genuine dispute of material fact, and summary judgment is granted in favor of defendants on the "significant disfigurement" claim.

B.   "Permanent Consequential Limitation of Use" and "Significant Limitation of Use"

Next, defendants argue that there is no competent record evidence that plaintiff's injuries to his cervical spine, right shoulder, and right knee could amount to either a "permanent consequential limitation of use of a body organ or member" or a "significant limitation of use of a body function or system."

New York courts have noted the elusiveness of defining the difference between a "permanent consequential limitation of use of a body organ or member" and a "significant limitation of use of a body function or system."   *See, e.g.*, *Vidal v. Maldonado*, 873 N.Y.S.2d 842, 845–46 (N.Y. Sup. Ct. 2008).   Notably, the New York Court of Appeals has defined both "consequential" and "significant" as "important," and, thus, uses the words interchangeably.   *See Byrne v. Oester Trucking, Inc.*, 386 F. Supp. 2d 386, 393 (S.D.N.Y. 2005) (citing *Toure*, 774 N.E.2d 1197, at 1201).   In addition, there are "abundant cases" in which body "function," "system," "organ," and "member" are used interchangeably.   *Vidal*, 873 N.Y.S.2d at 845–46. The cases also commonly find that if a party raises a genuine dispute of material fact as to whether the injury is a "permanent consequential limitation of use," it will also have raised a genuine

8

dispute of material fact as to whether the injury is a "significant limitation of use." *See, e.g.,* *Toure*, 774 N.E.2d 1197; *De La Rosa v. Gomez*, 924 N.Y.S.2d 59 (N.Y. App. Div. 1st Dep't 2011); *Mendez ex rel. Davis v. Mendez*, 897 N.Y.S.2d 102 (N.Y. App. Div. 1st Dep't 2010); *Vargas v. N.Y.C. Transit Auth.*, 679 N.Y.S.2d 44 (N.Y. App. Div. 1st Dep't 1998).

The only clear difference between the two phrases is that it is more difficult to qualify an injury as a "permanent consequential limitation of use of a body organ or member," than as a "significant limitation of use of a body function or system" because the former requires evidence of "permanence." *Altman v. Gassman*, 608 N.Y.S.2d 651, 651 (N.Y. App. Div. 1st Dep't 1994) (citing *Partlow v. Meehan*, 548 N.Y.S.2d 239, 240 (N.Y. App. Div. 2d Dep't 1989)). Therefore, limitations to a "body organ or member" must be accompanied by evidence of *importance and permanence* in order to qualify as a "serious injury," whereas limitations to a "body function or system" need only be accompanied by evidence of *importance* in order to qualify as a "serious injury." *See Cancel v. City of New York*, Nos. 570169/02, 02-183, 2003 WL 21911139, at *8 (N.Y. App. Div. 1st Dep't July 30, 2003). "Permanence" is a medical determination that requires an objective basis, and mere repetition of the word "permanent" in a medical report is insufficient. *See Dufel v. Green*, 647 N.E.2d 105, 107 (N.Y. 1995); *Lopez v. Senatore*, 484 N.E.2d 130, 131 (N.Y. 1985).

Important injuries must not be "minor, mild or slight." *Licari*, 441 N.E.2d at 1091. To show "importance," the plaintiff must provide medical evidence detailing either a numeric percentage of his loss in range of motion, or a qualitative assessment of his condition that is based on objective medical information, and compared to "normal" use. *See Toure*, 774 N.E.2d at 1200 (citing *Dufel*, 647 N.E.2d at 107; *Lopez*, 484 N.E.2d at 131). Finally, if the parties have offered

conflicting medical evidence a "serious injury," a trial is necessary to determine the credibility of the medical findings.  *Cassagnol v. Williamsburg Plaza Taxi, Inc.*, 651 N.Y.S.2d 518, 519 (N.Y. App. Div. 1st Dep't 1996).

      1.  The Parties' Have Met Their Respective Burdens Through Expert Testimony

In support of their motion, defendants have submitted the affidavit of Dr. Edward Crane, a physician who completed an orthopedic evaluation for this litigation.  Defs.' Mem. Ex. G. Defendants also attached the report of Dr. Lewis Rothman, a radiologist who they engaged to review plaintiff's MRI scans.  Defs.' Mem. Ex. H.[4]

In response, plaintiff has provided the affidavit of Dr. Robert Goldstein, a physician who also completed an orthopedic examination for this litigation.  Pl.'s Mem. Ex. B.  In addition, plaintiff provided the affidavit of Dr. John Vlattas, his treating physician.  Pl.'s Mem. Ex. C. Finally, plaintiff submitted the affirmation of Dr. Robert Diamond, plaintiff's radiologist, which certifies the authenticity of the relied-upon MRI films.  Pl.'s Mem. Ex. D.

---

[4]     Plaintiff contends that the defendants' expert reports are insufficient to satisfy their burden of proof on this motion, arguing that: (1) Dr. Crane's affidavit, based on one short evaluation, is not probative when compared to the continuous treatment of Dr. Vlattas; and (2) that because Dr. Rothman only reviewed the MRI films, his findings are not probative.  This appears to be an argument as to the weight that should be accorded to these records, rather than an argument as to whether they are probative at all, and does not prevent their use by defendants to meet their summary judgment burden.  *See Velez v. Almonte*, 925 N.Y.S.2d 471, 471 (N.Y. App. Div. 1st Dep't 2011) (finding the "affirmed reports from [the defendants'] radiologist, who reviewed plaintiff's MRI films" sufficient to establish a prima facie case against a serious injury); *Vidal*, 873 N.Y.S.2d at 844–45 (describing the typical "independent" one-time examination offered by defense witnesses).

a. *The Parties' Submissions of Medical Evidence Are Admissible and Probative*

In order to meet their respective summary judgment burdens, the parties must submit sworn, and otherwise admissible, medical evidence. *Shaw v. Looking Glass Assocs.*, LP, 779 N.Y.S.2d 7, 9–10 (N.Y. App. Div. 1st Dep't 2004) (citations omitted). Defendants argue that all of plaintiff's submissions are inadmissible for a variety of reasons. First, defendants insist that, although Dr. Goldstein's and Dr. Vlattas' affidavits are sworn, they are, in fact, inadmissible because they rely on unattached and unsworn reports, such as hospital records and reports from other doctors. Defs.' Mem. 6–7 (citing *Marziotto v. Striano*, 831 N.Y.S.2d 551 (N.Y. App. Div. 2d Dep't 2007)). Interestingly, Dr. Crane, defendants' expert witness, *also* makes references to some of the same unattached and unsworn medical reports. Defs.' Mem. Ex. G, at 1, 3–4. In any case, while both plaintiff's and defendants' doctors seem to have reviewed plaintiff's pertinent records prior to examining him, none of these doctors have relied on the work of other doctors in performing their medical testing and formulating their medical opinions. Therefore, "[t]o the extent the expert[s] incorporated into [their] affirmation[s] several unsworn reports of other doctors who examined plaintiff, these unsworn reports were not the only evidence submitted by plaintiff in opposition to the motion, and may be considered to deny a motion for summary judgment." *Rivera v. Super Star Leasing, Inc.*, 868 N.Y.S.2d 665, 666 (N.Y. App. Div. 1st Dep't 2008) (citing *Largotta v. Recife Realty Co.*, 679 N.Y.S.2d 141 (N.Y. App. Div. 1st Dep't 1998)); *see Byong Yol Yi v. Canela*, 895 N.Y.S.2d 397, 398 (N.Y. App. Div. 1st Dep't 2010) ("The affirmed report of plaintiff's doctor was admissible, even though it relied in part on the unsworn reports of another doctor who read plaintiff's MRIs"). Thus, defendants' argument concerning the references to unattached and unsworn reports is without merit.

11

Next, relying on *Thompson v. Abbasi*, 788 N.Y.S.2d 48 (N.Y. App. Div. 1st Dep't 2005), defendants further argue that Dr. Goldstein's affidavit is inadmissible because it fails to provide evidence contemporaneous to the accident.   *Thompson*, however, held that a lack of contemporaneous evidence is a lack of proof issue, not an admissibility issue.   *Id.* at 51 ("[T]here are no objective findings contemporaneous with the accident showing any initial range-of-motion restrictions on plaintiff's cervical spine . . . . Consequently, there is a failure of proof . . . ."). Therefore, while defendants might have objected to the probative value of Dr. Goldstein's affidavit with respect to the issue of causation, his affidavit is not inadmissible.   As to Dr. Vlattas, his affidavit details a series of range-of-motion testing that begins less than a month after the accident. Pl.'s Mem. Ex. C, at 2–3.   Under the case law, this is sufficiently contemporaneous for the purposes of rebutting a summary judgment motion.   *See Jalloh v. Bah,* 915 N.Y.S.2d 636 (N.Y. App. Div. 2d Dep't 2011) (holding that three weeks was contemporaneous); *Castro v. Frias,* No. 00-170, 2001 WL 1722883, at *1 (N.Y. App. Div. 1st Dep't Dec. 13, 2001) (holding that an examination "within a few months of the accident (after she had been treated elsewhere)" was contemporaneous); *see also Walcott v. Ocean Taxi Inc.*, No. 39004/2004, 2009 WL 241733, at *3 n.3 (N.Y. Sup. Ct. Feb. 3, 2009).   Therefore, defendants' argument with respect to contemporaneous proof is rejected.

Defendants also argue that Dr. Diamond's affirmation is inadmissible because he "fail[ed] to attach copies of the reports that he purports to affirm."   Defs.' Mem. of Law in Reply to Pl.'s Mem. ("Defs.' Reply") 6 (citing *Miller v. Metro. Suburban Bus Auth.*, 587 N.Y.S.2d 440 (N.Y. App. Div. 2d Dep't 1992)).   Dr. Diamond's affirmation, however, merely authenticates the MRI films, dated September 1, 2010, that were also used by defendants' expert radiologist.   *See* Pl.'s

Mem. Ex. D; Defs.' Mem. Ex. H.   The report makes no findings regarding what the films show, nor does plaintiff use Dr. Diamond's report to establish any element of his claim.   Pl.'s Mem. Ex. D.   The authentication is specific enough so that there is no question as to which films he has examined.   In addition, the films in question were available to both parties, and, thus, there was no need to attach the films.   *See Ayzen v. Melendez*, 749 N.Y.S.2d 445 (N.Y. App. Div. 2d Dep't 2002) (citing *Perry v. Pagano*, 699 N.Y.S.2d 882 (N.Y. App. Div. 2d Dep't 1999); *Raso v. Statewide Auto Auction*, 691 N.Y.S.2d 158 (N.Y. App. Div. 2d Dep't 1999); *Pietrocola v. Battibulli*, 656 N.Y.S.2d 559, 561 (N.Y. App. Div. 3d Dep't 1997)).   Therefore, defendants' argument with respect to failure to attach the MRI films is unavailing.

Plaintiff does not question the admissibility of defendants' medical reports.   As all of the parties' medical reports are admissible, the court now considers whether the parties have met their respective burdens of proof with respect to plaintiff's claim of having sustained a "serious injury."

> b.   *The Parties' Medical Reports Create a Genuine Dispute of Material*
> *Fact as to Whether Plaintiff's Injuries Are Important and Permanent*

Dr. Crane's report, submitted by defendants, states that plaintiff's injuries are neither permanent nor of a limiting nature.   The report details objective range of motion testing, and concludes that plaintiff has normal range-of-motion in the affected body parts.   Defs.' Mem. Ex. G, at 3.   For instance, Dr. Crane states that the "[r]ange of motion of [plaintiff's] neck was complete: extension 30°, flexion 45°, rotation to the right 60°, rotation to the left 60°."   Defs.' Mem. Ex. G, at 2.   He further observed that the "[r]ange of motion of his right shoulder was as follows, with the left noted in parenthesis for comparison purposes: forward elevation 170° (same), abduction 150° (170°), internal rotation to T12 (same), and external rotation to 60°."

Defs.' Mem. Ex. G, at 2.    Dr. Crane next notes that the "range of motion at both knees was

identical and normal: flexion from 0° to 140°."    Defs.' Mem. Ex. G, at 3.    Each of plaintiff's

range-of-motion result fits within the "normal values" annexed to Dr. Crane's report.    *See* Defs.'

Mem. Ex. G, at 5.    Finally, the report states that plaintiff's prognosis is "excellent."    Defs.' Mem.

Ex. G, at 3.

Dr. Rothman's report states that plaintiff suffers from "chronic degenerative disc disease"

and "chronic degenerative joint disease" in his knees, indicating that his injuries were not causally

related to the accident.    Defs.' Mem. Ex. H, at 12.    Based on the reports of Dr. Crane and Dr.

Rothman, the defendants have provided enough evidence for a jury to conclude that plaintiff did

not sustain a "serious injury" within the meaning of the statute.    N.Y. Ins. Law § 5102(d).    That

is, that plaintiff did not sustain a "permanent consequential limitation of use" or a "significant

limitation of use" as a result of the accident.

Under the burden-shifting framework, in order to survive a summary judgment motion,

plaintiff must show that there is a genuine dispute of material fact.    Plaintiff has provided Dr.

Goldstein's medical affidavit, which indicates a poor prognosis for the permanent injuries to

plaintiff's cervical spine and right knee resulting from the accident.    Pl.'s Mem. Ex. B, at 9.    The

report states that plaintiff has abnormal range of motion in the cervical spine, and further states that

plaintiff's recovery from the knee surgery is not complete, thereby limiting plaintiff's activities,

such as climbing stairs, running, and participating in sports.    *See* Pl.'s Mem. Ex. B, at 6–8.    For

instance, Dr. Goldstein notes that "[v]isual range of motion testing of the cervical spine revealed

flexion to 45 degrees (normal 45 degrees), extension 45 degrees (normal 45 degrees), lateral

rotation 60 degrees to the right, 80 degrees to the left (normal 90 degrees) and lateral bending 35

14

degrees right/left (normal 45 degrees)." Pl.'s Mem. Ex. B, at 6.    Although Dr. Goldstein notes

that "range of motion testing . . . revealed full range of motion of both . . . knees," he diagnoses

plaintiff as having "internal derangement [of the] right knee with torn medial meniscus." Pl.'s

Mem. Ex. B, at 7–8.   Dr. Goldstein concludes that plaintiff "sustained permanent injuries to his . .

. cervical spine and right knee . . . . [and that his] [p]rognosis is poor for further improvement."

Pl.'s Mem. Ex. B, at 8–9.

    As has been noted, Dr. Vlattas first saw plaintiff twenty-seven days after the accident.   His

report, using objective MRI scans and range-of-motion tests, indicates an abnormal range of

motion, and therefore a limitation of his cervical spine and right knee.   It also suggests that

plaintiff's injuries are permanent and continue to limit activities, such as showering, dressing,

ascending and descending stairs, standing for long periods of time, and participating in

recreational activities.   Pl.'s Mem. Ex. C, at 9.   Initially, plaintiff complained of "headaches

which were worsening," that "he was unable to smile as left lower lip did not elevate," "upper neck

pain, bilateral knee pain and stiffness," and "he believed [that] he had struck his knees on the

dashboard" during the accident and "denied injuries like this in the past."   Pls.'s Mem. Ex C, at 2.

Dr. Vlattas' initial physical examination revealed "restricted range of motion in [plaintiff's

cervical spine] of extension 30 degrees, normal 60 degrees; flexion 40 degrees, normal 50 degrees;

right and left lateral bending 30 degrees, normal 45 degrees; right and left rotation 60 degrees,

normal 80 degrees . . . [and] tenderness along the inferior patellar poles, patellar tendons and tibial

tuberosities" of both knees.   Pls.'s Mem. Ex C, at 3.   Initial treatment included prescription

medicines, a referral to plastic surgery for the facial laceration and neurology for headaches, and a

course of physical therapy.   Pls.'s Mem. Ex C, at 3.   As treatment of the injuries progressed,

plaintiff underwent a surgical intervention on his right knee, and began to "note[] neck pain bilaterally into the shoulder."  Pls.'s Mem. Ex C, at 5.

Dr. Vlattas concluded his report by listing plaintiff's range of motion from his most recent examination and compared them to normal values as follows:

> [r]ange of motion of the cervical spine reveals flexion to 40 degrees, normal 50 degrees; extension 30 degrees, normal 60 degrees; right lateral bending 25 degrees, normal 45 degrees; left lateral bending 35 degrees, normal 45 degrees; right rotation 60 degrees, normal 80 degrees; left rotation 70 degrees, normal 80 degrees,"

and range of motion of the right shoulder reveals "abduction 160 degrees, normal 180 degrees; anterior flexion 180 degrees, normal 180 degrees; external rotation 70 degrees, normal 90 degrees; [and] internal rotation 50 degrees, normal 90 degrees."  Pl.'s Mem. Ex. C, at 8.

Like Dr. Goldstein, Dr. Vlattas diagnosed plaintiff with "right knee internal derangement with torn medial meniscus," and notes that it would "requir[e] right knee arthroscopy with partial medial meniscectomy, tricompartmental synovectomy, shaving chondromalacia of the patella, trochlear groove and medial femoral condyle."  Pl.'s Mem. Ex. C, at 8.   Unlike Dr. Goldstein, Dr. Vlattas states that there is "permanent residual loss of motion of the . . . right knee."  Pl.'s Mem. Ex. C, at 9.   Dr. Vlattas concludes that plaintiff has sustained a "significant limitation of function of the cervical spine and right knee."  Pl.'s Mem. Ex. C, at 9.

Thus, plaintiff's experts' findings show that a reasonable jury could find that plaintiff's injuries are *permanent and important*, and thus, "consequential" and "significant" limitations to his cervical spine and right knee.   While Dr. Vlattas notes that plaintiff has "weakness in [right] shoulder abduction" and that plaintiff is "right handed," he appears to have not come to the conclusion that the injury to plaintiff's right shoulder is importantly or permanently limited, as he did not include the right shoulder in his diagnosis list.  Pl.'s Mem. Ex. C, at 8.   Likewise, Dr.

16

Goldstein noted that "[t]here was full range of motion noted on visual testing of both shoulders." Pl.'s Mem. Ex. B, at 6.

Therefore, plaintiff has met his burden of creating a genuine dispute as to whether he has sustained a "serious injury" with respect to his cervical spine and right knee. *Charley*, 863 N.Y.S.2d at 206–07. As defendants' experts contend that there is no limitation, and plaintiff's experts contend that there is an important and permanent limitation to plaintiff's cervical spine and right knee, the issue must be presented to a fact-finder to weigh the credibility of the conflicting medical testimony. *Cassagnol*, 651 N.Y.S.2d at 519.

### C. Causation

Defendants rely upon Dr. Rothman's findings of degenerative disc and knee joint diseases to question the cause of plaintiff's injuries. "[S]ummary dismissal of the complaint *may* be appropriate" where defendant has presented persuasive evidence of pre-existing conditions, indicating a lack of a causal connection, and the plaintiff has failed to address the defendant's causation argument. *Pommells v. Perez*, 830 N.E.2d 278, 281, 287 (N.Y. 2005) (emphasis added).

In *Pommells*, the defendants presented plaintiff's original treating physician's report, finding full recovery from the accident, but also that there was evidence of symptomatic degenerative disease. *Id.* at 285–86. In response, plaintiff submitted the report of his then-current treating physician, who plaintiff first saw several months after he was released from his first physician's care, and over a year after the accident occurred. The report concluded that plaintiff had sustained permanent injuries as a result of the accident, but failed to address the claimed degenerative disease. *Id.* at 286. The Court found that "with persuasive evidence that

17

plaintiff's alleged pain and injuries were related to a preexisting condition, plaintiff had the burden to come forward with evidence addressing defendant's claimed lack of causation." *Id.* at 287.

In the wake of *Pommells*, there have been many summary dismissals where plaintiff's doctors have failed to rebut findings of degenerative disease. *See, e.g.*, *Tudisco v. James*, 813 N.Y.S.2d 482 (N.Y. App. Div. 2d Dep't 2006).   There have been other cases, however, where plaintiffs have successfully raised triable issues of causation. *See, e.g.*, *Spencer v. Golden Eagle, Inc.*, 920 N.Y.S.2d 24, 26 (N.Y. App. Div. 1st Dep't 2011) (noting that a doctor's report "wherein he acknowledges some pre-existing injuries but attributes specific other injuries to the accident" was sufficient to raise a triable issue); *Linton v. Nawaz*, 879 N.Y.S.2d 82, 87 (N.Y. App. Div. 1st Dep't 2009) (noting that a doctor's conclusion of causation , "based on a full physical examination of plaintiff made within days of the onset of plaintiff's complaints of pain and other symptoms, which plaintiff told him ensued after he was involved in a traumatic accident" was sufficient to raise a triable issue).

Here, the court finds that plaintiff has successfully raised a triable issue of causation. Unlike the treating physician in *Pommells*, Dr. Vlattas has been continuously treating plaintiff since shortly after the accident.   Dr. Vlattas' finding of causation was based on extensive objective testing performed contemporaneously with the onset of plaintiff's symptoms, and with the knowledge of the recent accident. *See Linton*, 879 N.Y.S.2d at 87.   Furthermore, Dr. Vlattas' and Dr. Goldstein's conclusions acknowledge some pre-existing conditions but attribute specific injuries to the accident. *See Spencer*, 920 N.Y.S.2d at 26; *see also* Pl. Mem. Ex. B, at 8 (noting minor pre-existing chondromalacia in the right knee, but also noting "internal derangement right knee with torn medial meniscus" caused by the accident); Pl. Mem. Ex. C, at 3 (noting

degenerative changes in the cervical spine, but also additional cervical injuries related to the accident).

Through Dr. Rothman's report, defendants have made a prima facie showing that would permit a trier of fact to conclude that plaintiff's injuries are the result of degenerative disease, and, thus, not a result of the motor vehicle accident.   Plaintiff has successfully rebutted this showing, however, by producing Dr. Vlattas' and Dr. Goldstein's findings of a causal connection between his injuries and the accident.   The conflicting reports thereby create a genuine dispute for trial. As such, the issue must be presented to a fact-finder to weigh the credibility of the conflicting medical testimony.   *Cassagnol*, 651 N.Y.S.2d at 519.

## CONCLUSION AND ORDER

Here, there are no facts that demonstrate that plaintiff's injuries meet the threshold of a "serious injury" under the theory of "significant disfigurement."   Defendants' motion is therefore GRANTED as to this claim.

On the other hand, competent evidence demonstrates that there is a genuine dispute as to whether plaintiff's injuries to his cervical spine and right knee meet the "serious injury" threshold under a "permanent consequential limitation of use" or a "significant limitation of use" test. Accordingly, defendants' motion is DENIED as to these claims.

For the foregoing reasons, defendants' motion for summary judgment is GRANTED, in part, and DENIED, in part.


Dated:        September 17, 2012            /S/            Richard K. Eaton
              New York, New York                            Judge

                              19